May it please the court. My name is Ramsey Rammerman and I'm here today on behalf of the City of Everett and I'd like to endeavor to reserve seven minutes for rebuttal. Please watch the clock. The district court erred when it enjoined the enforcement of the city's lewd conduct ordinance based on the vagueness doctrine. The ordinance employed the anatomically correct phrase anal cleft and a person of ordinary intelligence could readily determine the meaning of that phrase by consulting the text of the statute and a standard dictionary. The district court also erred in adjoining the city's dress code ordinance in this facial First Amendment challenge primarily because the plaintiffs failed to prove that their conduct qualified as expressive conduct under the Spence analysis. The district court ruled that the lewd conduct ordinance was unconstitutionally vague because the district court was uncertain as to the meaning of the phrase anal cleft but the district Supreme Court has Instead the test is whether a person of ordinary intelligence could determine the meaning of the phrase by consulting the full text of the statute and a standard dictionary. Counsel how is a reasonable person supposed to know how to interpret that phrase? If we look at the text of the statute we readily determine that we're talking about a part of the human anatomy that is associated with the anus and is a vertical opening. We look at the definition of anal and cleft in the dictionary we know it's obviously associated with the anus and that it is an opening made as if by splitting. There's only one vertical opening made as if by splitting that could be associated with the anus on the human body and that person could figure that out by looking at these resources. In fact the record shows that the plaintiff Javonna Edge herself was able to figure out the meaning of this phrase because it is the identical phrase that's used in the Snohomish County ordinance and after she was cited for violating this she was able to instruct her employees how to comply with it. We've also seen that the same phrase is used throughout the country in different jurisdictions showing that it is an appropriate anatomically correct phrase and it passes the vagueness standard. There's two parts to the vagueness standard forgive me for interrupting but there's the whether a person of ordinary intelligence would understand basically and then there's the arbitrary and discriminatory enforcement. Yes and here the district court misapplied that standard because that standard goes to problems on determining what is at issue and the district court merely pointed to problems that the police may have in obtaining evidence to determine whether it was violated. The difficulty of enforcement as opposed to arbitrary. Correct but when it comes to the even in the arbitrary enforcement again we look at are the it does is the standard I'll give the police discretion to determine what a violation is that here the standard is precise the problems the district court pointed to was saying that the police might have problems finding evidence in the United States versus Williams makes it clear that problems in determining whether a ordinance has been violated is not a vagueness issue. Turning to the issue of the First Amendment and the dress code this is a facial challenge and the plaintiffs therefore had the burden of proving under Spence that their conduct qualified as expressive. The district court failed to apply the proper Spence standard by failing to require the plaintiffs to meet their burdens under Spence. First they were required to prove that they were conveying a particularized message. If nude dancing or lap dancing is expressive conduct why isn't wearing the outfits not and pouring coffee not expressive conduct and what message what particularized message does nude dancing or semi closed dancing convey? In Anderson versus City of Hermosa Beach this court held that nude dancing is exempt from the particularization requirement because it falls into the narrow category of purely expressive conduct and therefore by analogizing to nude dancing the district court in effect relieved the plaintiffs burden of their burden of proving any particularization because they have made it clear that they are not engaging in erotic entertainment or any and shows are banned at the stands they are simply engaging in standard commercial transactions and those are not purely expressive. I think Judge Okuda's point is really an excellent one and I struggle with the context here because a nude dancer in a cabaret or on a stage is you know in that context is doing one thing and the context here is so very different this is this is conduct which involves in wearing a garment a very skimpy garment in a in a commercial retail establishment where somebody's serving a cup of coffee and there's a tip jar and there's a very different message there it seems to me so when I look to Spence it seems to me there's a message all right being sent by the barista's wearing these costumes and it seems to me to be entirely distinct from the one that is mentioned in their declarations. I would agree with that. I do if I think the declarations talk I think it's incredibly important that wearing these outfits they think expresses empowerment is what the declarations say and if I think that it's expressive but the message likely to be received is entirely different. I think it's incredibly important under the Spence analysis there needs to be congruity between the message they're intending to convey and the message the customers are receiving in order to qualify as expressive conduct. I think it's also important to note that there's a good reason that they did not say they were engaging in erotic entertainment that's because if they did they would then have to comply with the city's erotic entertainment ordinance which wouldn't allow this type of business because it has to be completely not visible from the streets and such. So could I dig a little deeper on this because I've really gone back and forth about this message there are and we don't make credibility determinations we have all of these declarations that say that the message that is intended to be sent is one of and wear any particular outfit and it and it struck me as quite improbable at first and then I thought about what would have been scandalous in my grandmother's day by way of women's clothing and you can imagine that the continuum I had a dress code when I was a kid in school and I couldn't wear pants to school so it I mean there has been an evolution here and while this seems like a pretty extreme end of the spectrum it doesn't seem outlandish so what do I do about that? Well I think the role of the Spence analysis and its two elements are both are they intending to convey a message and you can you can believe that they are intending to convey the message they say they're trying to convey but there also has to be a great probability that your average person is going to understand that message and the problem with clothing is that it sends a variety of different messages someone could wear the exact same outfits and intend to convey it a very different message an erotic message and that and so when it's when a message is so variable such as that it does not going to matter it's not going to meet the standard. Any declarations in the record about the anyone members of the public understanding the message that the declarations from the baristas that they were intending to convey? There's not any evidence from customers showing they understood the message the baristas were intending to convey the only evidence of the customer reactions are the evidence the city submitted which are screenshots showing the comments on their photos. Well there's also comments there's a police report that I read where a citizen was complaining very stridently about having witness of an interaction that was way on the extreme end. Yes there's definitely involved touching and whatnot and so we have that in the record as well as did the district court. Yes there's there is a lot of evidence on the sexual nature of the conduct that was occurring at these stands. The City Council considered not just forgive me not just to get to judge Dakota's point it's not just describing the conduct by police officers but I think citizens as well and and their impression what they were appalled. Yes there was there were I think something like 40 different citizen complaints reflected in this record in one of the police reports. We had a very strong citizen reaction which is of course why the City Council took this action and going on if even if this is expressive conduct the certainly the City Council had the authority to adopt this regulation it withstands intermediate scrutiny. We have a record here that shows from seven different law enforcement investigations of four different barista stands where this illegal sexually related conduct was occurring and the secondary harms that come from that and under Alameda the court the district court should have deferred to any plausible the City judgment that there was a link between this business model and the conduct they had the authority to do that and I'm already eating into my rebuttal but just on the issue of the narrow tailoring the district court also misapplied that standard. I think it's important to note that as the plaintiffs concede in their own briefing even under the dress code the the plaintiffs in this case remained free to wear a bikini and it convey their message almost anywhere in the city including while serving coffee in a sit-down restaurant is a very narrowly tailored that restriction that only applies in one location leaves ample opportunity for them to convey their message in other locations as well so can I just quickly on this narrow tailoring the district court thought that it that it wasn't narrowly tailored and that the when I talk about the dress code as opposed to the lewd ordinance conduct that the dress code was going to require the baristas to wear more clothing than just about it is true that while working at the coffee stands they'd have to wear a tank shorts but again when it comes to the issue of narrow tailoring under intermediate scrutiny the test is is not the least restrictive mander it's whether it's merely whether this is a reasonable attempt it's going to be more effective to affect the law and the type of line drawing that would come on where how much clothing they would wear is not an appropriate analysis under intermediate scrutiny we should be deferring to the city's judgment on what is necessary thank you thank you good morning your honors and may it please the court Melinda evil hair of Benidorm and Sirlin appearing on behalf of the appellees I want to start back at the very beginning by simply saying this is an appeal from the grant of a preliminary injunction and the standard of review of review is abuse of discretion and in an abuse of discretion analysis this court looks at whether or not the district court applied the correct law and whether or not its findings of fact or its application of law to fact was clearly erroneous and there's a rather colorful expression that's repeated in our brief about how to determine clearly erroneous finding a factor application of fact in this instance for vagueness challenges could we start there because those don't involve findings of fact we're under the void for vagueness standard there is a notice component and there is also the arbitrary and capricious enforcement standard in the u.s. Supreme Court has actually said that the more important test is the requirement that a legislature established minimum standards to govern law enforcement that's in colander versus Lawson 461 u.s. 352 so here we have a situation where we have a term which despite the fact as counsel says it has been used in a few other reported cases it's not this exact term that has ever been analyzed by a court so we have the term anal cleft whether or not that is sufficiently determinative to for a person of ordinary intelligence to understand exactly what is meant by that might in fact be a question of fact reasonable person ordinary understanding but beyond that this term is not simply the clear term anal cleft it is modified by the phrase one half the bottom one half of the anal cleft now the cleft curves it's kind of a J curve how do you measure that bottom half what what does law enforcement have to do in order to determine whether or not a the bottom half is covered or not covered so we have both a notice issue as in how do I determine what is how do I the person trying to determine and conform my conduct to the statute how do I determine where that bottom half is and then how does law enforcement actually go in and enforce that so opposing counsel went straight to Williams where Justice Scalia said that what renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it established has been proved but rather the indeterminacy of what that fact is so his point is it says one half the bottom one half of the anal cleft and it may be difficult to to implement if you will and then we rely upon juries to decide whether that fact has been proven either beyond a reasonable doubt or by a preponderance but how do you distinguish the Williams case your honor I think it's that indeterminate line in there I when you start talking about bottom half or top half you're talking about generally a straight line you're not generally talking about a curved line so I think it's indeterminate exactly where does the line how did how does the normal person how does the average person determine what that line is I think that that is that is so it is so vague it is it is difficult and now you're getting into a question of of doing advanced math I think it may be possible to determine the bottom half of a j-curve I don't know case it might be difficult I understand that but a close case as Judge Gristin says what we have juries for if you're only wearing a g-string and so that the entire bottom is disclosed then there obviously if you're naked and you're in show in your entire bottom is showing then that would clearly be a violation after that I think you're getting into increments of well you know do I do I have to cover the curve of the of the buttock do I have to how do I determine exactly where it is to cover the bottom  do you want to move to the First Amendment issue and why this is expressive conduct and I let me ask the question I asked opposing counsel which is is are there any declarations in the record from members of the public saying that they understood the message that the baristas said they were attempting to convey your honor there are not declarations in the record from members of the public who say that there are declarations there are none from the public correct are there there's no declarations from the public saying they understood the message correct your honor on this on this preliminary injunction action and I respect that that may be something that would need to come into play at trial but in a preliminary injunction analysis as the cases do say that often the evidence is not as robust as we would like it to be for other purposes there is a very burden pardon your honor it was your bird it was your my bird your honor and there is evidence in the record there are declarations from Miss Hernandez and Miss Iska who both testified that they have had conversations with client with customers who have understood the message and that it has sparked conversations and whatever it has to be the message they intend to convey that and what I was positing earlier is there's a message all right but what if there's a huge disconnect between what the declarations and frankly haven't seen a case like this no there's just a huge disconnect between what the the speaker says she intends to convey and what is very likely to be received and the and the Supreme Court does say we have to look at what what message is likely to be received and yet your honor in many of the cases the seminal cases that discuss what this expressive what the expression must be we find that part of the reason there is litigation over it in the first place is because the message that is being sent is not understood by the receiver who objects to the message and we can go all the way back to Spence in that case for the symbolic speech it just seems that the message was not happily received like I don't think anyone doubted what burning an American flag means there was no issue about that in the case the question was could a state criminalize that conduct but in the case where it was an upside down flag with a peace symbol on it the court said it was given the context of the bombing in Cambodia the message was there was a great likelihood that the message would be conveyed so I don't remember seeing any concern about the nature of the message for symbolic speech opposing counsel says you're not arguing that it's inherently expressive conduct like dance or erotic performance is that correct your honor I think the message that is here goes beyond it's not an erotic message it's not it's not forgive me for interrupting but judge Akuta's question is a really important one I for starters I didn't understand okay but just as a threshold your brief says very clearly you are not claiming to be engaged in erotic dance yes sure that right yes your interrupting but that's an important point and this is symbolic speech the conduct the way you get this to conduct is it's not it's not like that that the possession of pasties and g-strings was prohibited here it's it's the wearing of this very very skimpy outfit that is the conduct we're talking about and it is wearing what message is likely to be received by that forgive me and and your honor my my clients in their declarations time and again say that the message that they are sending is that essentially this this is not your mother's coffee stand okay that that that I am not bound by the moors that governed my grandmother okay my grandmother couldn't show an ankle in public we understand that and that's what we're trying to get at when we're talking about expressive speech which is that week I don't know of another case where that is involved conduct speech by conduct that is expressive where there has been a I take them at face value that they intend to send a message of women's empowerment and the message likely to be received as judge akuta said there are other cases where there's a symbolic conduct like burning a draft card burning a flag and so forth and and that speech is met with it is not well received as opposed to a real disconnect about what what is the speaker intend to be saying saying with this conduct your honor I agree that we couldn't find another case that exactly addresses the same issues in these case and and we put quite a bit of effort into trying to find one but I am in in a country with 300 plus million people coming from all different diverse backgrounds and different attitudes and sadly perhaps in in today's society where everything is so polarized that that wearing a red hat can create dissension because people are seeing that message differently and yet I don't think that it would be it would be held that that was not protected conduct I was wearing a hat that says make America great again conveys a very specific message that anybody looking at it would understand they're they're indicating their supporter of President Trump and then whatever goes with that so the question here is whether there is any similar conduct and in my concern and I think Judge Kristen mentioned this is that the public determined based on the police reports the public understood the message to mean I am sexually available or something along those lines as opposed to any anything that the baristas themselves intended to convey and your honor I'm not sure that that's a fair analysis of exactly what the police reports in the record convey to consider conduct so a woman wearing the very same outfit on a cabaret stage or frankly wearing a bikini on a beach meet on a beach you may not be sending any message at all but this is a retail establishment where we understand there's going to be a transaction going on and this is a female-owned establishment empowering women to make their own choices okay these women these baristas are not required by their employer to wear any particular outfit except one of course that combines that meets with whatever decency laws are legitimately applicable so in this instance and the women are making their own statements about I can make my choice I can choose to be in a working environment that is not sexual it's not a sex business and I can wear and what I please and it may be a little bit of kind of in your face what's the evidence we understand that that's the declaration say that's their intent but we need to determine whether there's a great likelihood of that message being understood so so what's the evidence in the record where can you point us to showing that it has a great likelihood of being understood by those who view it your honor I do go back to the declarations by Miss Hernandez and Miss Zilk Ziska excuse me where they talk about the reactions they get from their customers and again we're looking at an abuse of discretion standard I don't believe that that's a clearly erroneous finding at the preliminary factor so so but but let's back what if we even give you that and say this is there's there's an element of expressive conduct in there that is worthy of First Amendment protection because I think it is a very unique case yes your honor then what happens under why is it that why wasn't the city free to regulate this as a secondary effect well your honor they pointed to a bunch of crime in the area and so forth your honor and the police reports in the crime that they point to are the big the big fear factor comes from two owners who were rogue owners they were criminal they were running a criminal enterprise and hiding it behind the coffee stand facade that's not and they were they were they were adequately caught and punished under existing statutes there was no need to add this additional statute I think when your honor digs down into the legislative record you're going you see that this this was not so much a crime issue there is in fact in the record I believe it's at er 778 a report by the city of Everett police who say we actually did this study and there's no difference in crime between the adult establishments and the non-adult establishments and the things that are in the legislative record as an effort to try and bolster the statute are things that in fact are not related to secondary effects even assuming the secondary effects test applies and see our brief on that issue they aren't related to secondary effects their primary effects they're worried about the exploitation of the baristas they're worried about the women worried about women working very scantily clad late at night in a remote and isolated location why isn't that a legitimate public safety concern your honor I I think that that is a public safety concern regardless of what women are wearing women wear anything and they're raped and assaulted in this country they also mention drug use in stand prostitution public masturbation exploitation minors and x-rated shows we're we're we're we're we're we're among the the various items that we're presented to the city council and you have these we're again all things that took place with a couple of rogue stand owners who are not actually operating a coffee stand qua coffee stand there were police reports about Josh's establishment's to that identified the same not about prostitution on or not about drug use and that there is a mapped and the record reflects that there's a sign up there that says no shows don't ask and and does the record reflect that no shows occurred because the the police reports and otherwise your honor I would have to go back and look at that specific police report and wonder if it was by by what we did have the whole overlay of the problem with deputies in Snohomish County a deputy who was co-opted I think yeah but who was corrupt yes your honor I said co-opted I'm sorry working on the undercover investigation the allegation is that he was subsequently assisted some of the barista owners could I could I just ask whether or not I know I read that about an example of of a stand where the women weren't being paid at all and they were doing this entirely for tips making it much more likely that they would engage in this kind of very disturbing conduct did that involve one of the two people who was convicted I believe it did your honor and again there are that has nothing to do with what they're wearing that has to do with violations of labor laws that happen in any industry in this country and there are laws that are specifically designed to address exploitation of labor and whether I don't know that you can tie the fact that we're not going to pay a minimum wage to oh and by the way you're wearing skimpy clothing well I think the city council did and doesn't it make it a whole lot more likely that this conduct would be engaged in as opposed to just serving a cup of coffee your honor I don't know and I'm not trying to simply be partisan here I'm not sure that I see the connection I've handled a lot of labor cases in my life from factory workers to so I don't know what I don't thank you we took you over your time thank you Thank you your honor thank you your honor addressing the last issue that you're discussing as far as what is the count was it reasonable for the council to think that this dress code would help again I think it's important to understand that under the Alameda standard that the court was supposed to be applying he's supposed to defer to the City Council's plausible interpretation of the evidence and the evidence in the record showed not only that there was this problem of the baristas not being paid but we also showed that you know again the parallels between the business model that was used at these stands and strip clubs where we see the same type of pressures again even this this not paying the baristas and only allow them to work for tips was modeled after things that were done in strip clubs and that leads to again the type of crimes that we see which is why that's relevant and we had a lieutenant Duffy who testified at the second City Council meeting on this so the parallels between the business models that were employed at these stands and that are used at strip clubs and that thus resulting in the similar crimes I think council says this was primarily limited to the I think was Panico and Wilson to who were subsequently prosecuted and not to other stands such as Ms. Edges is that correct I would disagree with that I think that what we show here is we had again we investigated four different chains where this conduct occurred including the Panico and Wheeler but also Wheeler senior stand and this was prevalent at Ms. Edges stand as well we also the record also shows that more recently we have three independent sources that reference a current stand that's just outside of the city the Beehive stands and we had testimony that this stand has been cited by Snohomish County for nudity Ms. Edge actually filed a police report on this stand saying they're performing shows and have nudity there and then the Jane Doe declaration talked about talking with baristas there who were told that they and she was told that the baristas had to have sexual intercourse with the stand owner to get the best shifts so we see that this business model is susceptible to abuse by the unscrupulous person the fact that two individuals did it we don't need to prove Ms. Edges doing it what the record shows is that it is readily exploitable by the unscrupulous stand owner and so that gives the reason to believe that the city the city council had reason to believe that it's readily exploitable based on this record it was an extensive record we had as I said seven different police investigations all that uncovered the same type of conduct so council on that point one option would be to continue to investigate and to continue to prosecute where the conduct steps across the line and really is lewd conduct or is prostitution or something that is it's is criminalized right and and and that would not involve any kind of burden on permissible speech to the extent that there are baristas who really were just selling coffee and wanted to wear this type of outfit but that comes at a cost and the city council didn't want to continue to pay those large enforcement bills I think was there any other reason the city chose in the record that we know of that the city chose to go this route oh well I think the extensive cost of the investigation is not as hard I don't want to understate that sergeant Collier's declaration goes into some level of detail the city of Everett is dealing with opioid opioid crisis it's got gang crime it has to prioritize its resources and the this court has approved that type of consideration for example in the fair progress public progress versus Maricopa County they allowed the shutting down the limiting of the hours because of the extra crime that was caused in the late night hours it was a very valid consideration and trying to figure this out so the city had a good reason to do that on this record we also had the issue of the investigation to generate videotape and we've had a district court a superior court tell us that we have to disclose these videos of naked women to anybody you ask for them under the public records act and so the city doesn't want to have to generate these videos and the extra costs of that and that's a necessary step under the current investigative practice which we can avoid with the stress code ordinance on the issue of expressive conduct I just want to stress this is a facial challenge when this court has looked at conduct for example in Thorndike versus King which was the wearing of a sidearm the court said that on a facial challenge that could convey a variety of different things yeah it's shocking to see someone have a gun but in a facial challenge it has to prove you have to prove that everybody's going to get that message the mere proof that somebody might have interpreted the message correctly alone is not a sufficient in a facial challenge based on conduct so as we asked the court to please vacate both injunctions thank you. Thank you.
judges: Ikuta, Christen, Choe-Groves